Calhoun Bobbitt, Thomas Drought, Brite, Drought, Bobbitt & Halter, San Antonio, Tex., for plaintiffs-appellants.

Frank L. Heard, Jr., James D. Thompson, III, Vinson & Elkins, Houston, Tex., for defendants-appellees.

**Kittie West BURNS and Emma Searcy Burns Lennox, Plaintiffs–Appellants,**

v.

**The LOUISIANA LAND & EXPLORA- TION CO. and McMoran Production Co., Defendants–Appellees.**

No. 88–2566.

United States Court of Appeals, Fifth Circuit.

April 25, 1989.

Before POLITZ and JOLLY, Circuit Judges, and HUNTER,* District Judge.

E. GRADY JOLLY, Circuit Judge:

This case presents a question of construction of a mineral lease. We hold that, under this lease, the defendants' reworking operations performed on a dry hole did result in an extension of the lease.

I

Kittie West Burns and Emma Searcy Burns Lennox own undivided interests in a piece of real estate in Texas that they inherited from their mother. On May 31, 1976, this property was leased to Jake Hamon for a five-year term. In 1978, the operators of the Hamon lease, including McMoran Production Company, drilled a deep test well in search of natural gas. Their efforts were unsuccessful, and they subsequently filed a completion report with the Texas Railroad Commission reporting that the well had been "completed" as a dry well. This lease was kept alive for the remainder of the term by the payment of rental under a dry-hole clause, but no further operations were conducted, and the lease expired on May 31, 1981.

On July 20, 1981, Mrs. Burns' trustee executed a new oil and gas lease, leasing the property to McMoran for a primary term of three years. The Louisiana Land and Exploration Company ("LL & E") also

* District Judge of the Western District of Louisi- ana, sitting by designation.

had an interest in this lease. The lease contained the following provisions:

## IX.

If, prior to the discovery of oil or gas on the leased premises, Lessee shall drill and abandon a dry hole or holes thereon, or if, after discovery of oil or gas the production thereof should cease, this lease shall not terminate if Lessee commences reworking or additional drilling operations within ninety (90) days thereafter, or if it be within the primary term commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental payment date next ensuing after the expiration of ninety (90) days from the date of completion of the dry hole or cessation of production. If at the expiration of the primary term, oil or gas is not being produced from the leased premises, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within ninety (90) days prior to the end of the primary term, the lease shall remain in force so long as drilling or reworking of such well or of an additional well or wells are prosecuted in good faith, with no cessation of more than ninety (90) consecutive days, and if they result in production of oil or gas so long thereafter as oil or gas is produced, subject to the provisions of Paragraph X hereof.

## X.

. . . .

If after the expiration of the primary term this lease is being maintained in force and effect, in whole or in part, it shall, except as specifically provided below, nevertheless terminate as to all of the acreage and depths covered hereby except as following:

. . . .

(3) This lease shall remain in full force and effect insofar as it covers all acreage then covered hereby, if at the expiration of the primary term or less than ninety (90) days prior to the expiration of the primary term Lessee is engaged in actual drilling or reworking operations on a well located on the leased premises, or on acreage pooled therewith, and shall continue so long as Lessee prosecutes such operations with due diligence and in a good and workmanlike manner in a good faith effort to establish oil and gas production from the leased premises, and so long thereafter as Lessee does not allow more than ninety (90) days to elapse between the completion or abandonment of one well drilled under the provisions hereof and the commencement of actual drilling operations of another well on said land, or acreage pooled therewith, such operations being deemed "continuous drilling operations" under the terms of this lease. . . .

The lessees, of course, were aware of the open wellbore on the property, and the lease explicitly allowed them to use that open wellbore. The operators of this lease, McMoran and LL & E, did no drilling during the primary term of the lease, nor did they achieve any production. The only operation conducted by McMoran or LL & E during the primary term of the lease was a reworking of the open wellbore. They did this work between October 1983 and June 1984. This reworking operation was extensive, resulting in a total expenditure of approximately $1.2 million, but did not result in production. On June 20, 1984, the well was plugged and abandoned as a dry hole. No operations were in progress when the primary term of the lease expired on July 20, 1984.

On September 2, 1984, within ninety days of the termination of the reworking operations, LL & E entered the property and drilled a new well. LL & E did not have the landowners' permission, aside from the lease, to drill this second hole. The well did not produce, and was plugged and abandoned as a dry hole in April 1985.

The landowners, alleging that the lease had expired before LL & E drilled the hole, brought a suit in state court for trespass against McMoran and LL & E, claiming as damages the destruction of the speculative value of the oil and gas leasehold estate in

the land. The defendants removed the case to federal court. Agreeing that the lease is unambiguous and that no material issues of fact were in dispute, both sides moved for summary judgment on the issue of liability. The district court granted the defendants' motion, holding that the reworking operations in June 1984 extended the lease so that it was still in effect when LL & E drilled in September 1984.

## II

 We first determine the appropriate standard of review. This case presents a question of construction of a lease. Generally, contract interpretation is a matter of law reviewable *de novo* on appeal. *City of Austin, Texas v. Decker Coal Co.*, 701 F.2d 420, 425 (5th Cir.1983). Ambiguous contracts may require consideration of evidence beyond the four corners of the contract in order to determine the parties' intent, thus involving questions of fact, but whether a contract is ambiguous is itself a question of law. *Id.* at 425–26. Neither party here argues that the lease is ambiguous, nor did the district court rely on extrinsic evidence in granting summary judgment to the defendants when presented with cross-motions. Therefore, although the parties sharply disagree as to the effect of the lease in this case, we treat it as unambiguous and proceed to construe it *de novo.*

## III

 The ultimate question for us to determine is whether the lease was in effect when the defendants began drilling on September 2, 1984. The primary term of the lease ended on July 20, 1984. Thus, the lease was in effect at the time the drilling began only if the term was extended by some provision of the lease. The defendants rely on the second sentence of Paragraph IX:

> If at the expiration of the primary term, oil or gas is not being produced from the leased premises, but Lessee is then engaged in drilling or reworking operations thereon *or shall have completed a dry hole thereon within ninety (90) days*

*prior to the end of the primary term,* the lease shall remain in force so long as drilling or reworking of such well or of an additional well or wells are prosecuted in good faith, with no cessation of more than ninety (90) consecutive days, and if they result in production of oil or gas so long thereafter as oil or gas is produced, subject to the provisions of Paragraph X hereof.

(Emphasis added.) This sentence allows for an extension of the lease under two circumstances: (1) when drilling or reworking operations are underway at the time the primary term expires; and (2) when a dry hole has been completed fewer than ninety days before the primary term expires. It is undisputed that no drilling was being done and that reworking operations ended on June 19, 1984, a month before the end of the primary term. Thus, the lease was extended only if the termination of the unsuccessful reworking operations constituted, within the meaning of the lease, the completion of a dry hole.

### A.

We begin by examining the lease for a definition of "completion of a dry hole." The lease in Paragraph X states:

> For purposes hereof the date of completion of a well shall be the date on which the initial potential test is run or forty-five (45) days following the date on which the drilling rig is released from the location, whichever is earlier, and the date of abandonment of a dry hole shall be the date indicated on the Railroad Commission Plugging Report for such well or forty-five (45) days after the release of the drilling rig (or workover rig) from such location, whichever is earlier.

By this definition, the date of completion of a well occurs (1) when an initial potential test is performed on a well or (2) forty-five days after a drilling rig is released from a well. The district court, however, noted that the subsequent clause defines the date of abandonment of a dry hole, suggesting that the definition of the date of completion refers to the completion of producing wells. We agree with the district court's reading.

Although the definition of "date of completion of a well" does not explicitly limit application of the phrase to producing wells, the juxtaposition of this clause with the definition of "date of abandonment of a dry hole" in the same sentence, in addition to the similarity of the definitions, leads to the conclusion that the "date of completion of a well" more likely than not was meant to apply only to producing wells. The sentence preceding these definitions confirms this conclusion. This preceding sentence requires the lessee to "designate in the manner provided above, the oil unit or gas unit, as the case may be, for each such well completed after the expiration of the primary term within sixty (60) days after its completion." The oil or gas units to which this sentence refers are clearly producing wells, since the earlier provisions require only specified acreage around various types of producing wells to be designated as "gas units" or "oil units"; dry holes are not designated as units. Thus, under this sentence, a "well completed" after the primary term must be designated within sixty days of its "completion" such that, in this sentence, the completion of a well can mean only the completion of a *producing* well. The very next sentence specifies the "date of completion of a well," as well as the "date of abandonment of a dry hole." Based on this context, we conclude that the specified date of completion of a well applies only to producing wells, not to dry holes. As a result, this definition does not apply to the phrase "completion of a dry hole," and so does not exclude the application of the phrase "completion of a dry hole" to the termination of reworking operations in the absence of drilling. We also note that neither party on appeal relies on this definition to support either proposed construction of the phrase "shall have completed a dry hole" in Paragraph IX. Thus, the lease's definition of the date of completion does not decide the issue before us.

## B.

Since "completion of a dry hole" is not clearly defined for our purposes, we look next to the context in which the term is used, Paragraphs IX and X, to determine whether completion must follow the drilling of the well as opposed to reworking. The district court pointed out that the second sentence of Paragraph IX uses the terms "drilling or reworking" as a pair, both to define actions sufficient to extend the lease if underway at the expiration, and to specify the operations that, to extend the lease, must be commenced within ninety days of the termination of an unsuccessful operation. As the district court noted, "It is only logical to conclude that the parties intended the more general phrase 'shall have completed a dry hole' to encompass those same operations which are referred to throughout the remainder of the sentence."

The lessors argue, however, that the use of "completion of the dry hole" in the first sentence of Paragraph IX supports a different construction. Under the first sentence, if the lessee "shall drill and abandon a dry hole," the lease is extended if the lessee commences further operations or tenders a rental payment on or before the first rental payment date after ninety days from "the date of completion of the dry hole. . . ." In this first sentence, "drill and abandon a dry hole" is used parallel to "completion of the dry hole" for the purpose of extending the lease, suggesting that drilling is an element of completion, and thereby supporting a similar construction of the same phrase where it is used for a similar purpose in the second sentence of that same paragraph. Nevertheless, the second sentence controls this case; the immediate context of the phrase "shall have completed a dry hole" in the second sentence is therefore more significant, and that immediate context supports the conclusion that the completion of either operation, drilling or reworking, can extend the lease under this clause.

Furthermore, a related lease provision is more consistent with construing the lease to allow an extension whenever reworking operations occur within ninety days prior to the end of the primary term. Paragraph X provides that, if the lease is still in force after the primary term, it shall nevertheless terminate except as provided in subsec-

tions of Paragraph X. This paragraph, therefore, qualifies any extensions of the lease. Sub-paragraph (3) contains a "continuous drilling operations" clause similar to the second sentence of Paragraph IX except that it explicitly and clearly allows an extension of the lease if the lessee is engaged in any actual drilling *or reworking operations* fewer than ninety days prior to the end of the primary term. As noted, this provision has no independent force; it merely qualifies or allows the application of extensions defined elsewhere in the lease. For example, the lease is extended under other provisions for producing wells, but subsections (1) and (2) of Paragraph X define the acreage around such wells for which the lease is extended. In this context, the purpose of Paragraph X(3) is to repeat and thereby save the dry hole and continuous operations extensions first defined in Paragraph IX. The language of Paragraph X(3) that extends the lease for reworking operations fewer than ninety days prior to the end of the primary term loses its full unequivocal meaning if the extension in the second sentence of Paragraph IX is construed more restrictively.

The lessors argue against this conclusion on the basis of a phrase qualifying the continuous operations clause of Paragraph X(3) that provides for indefinite extension of the lease "so long thereafter as Lessee does not allow more than ninety (90) days to elapse between the completion or abandonment of one well drilled under the provisions hereof and the commencement of actual drilling operations of another well on said land...." According to the lessors, this phrase restricts the entire clause to wells "drilled under the provisions hereof," whereas the lessees here reworked a hole drilled under a previous lease. This argument is unpersuasive. Applied literally, the extension would be unlimited since, by not drilling a hole, a lessee can certainly avoid allowing *any* days to elapse. In any event, this phrase merely defines the length of the extension; it does not restrict the initial application of the extension. We do note, on the other hand, that this phrase uses the terms "completion *or* abandon-

ment" in the disjunctive in such a way as to suggest that the terms as used in this context in this lease are mutually exclusive, thereby supporting our conclusion above that this same paragraph's definition of "date of completion of a well" refers to producing wells while the definition of "date of abandonment of a dry hole" applies to wells that do not produce. In sum, Paragraph X supports the broader construction of the extension in Paragraph IX.

Nor can we conclude that common sense compels the more restrictive construction proffered by the lessors. This construction creates a distinction between reworking and drilling, and more leniently provides for extension after unsuccessful drilling. The rationale behind a dry hole extension is that a lessee may not have time, after unsuccessful operations, to commence new operations before the end of the primary term. Williams, *Oil and Gas Law* § 613.4 (1986 ed.). This rationale can apply to both unsuccessful drilling and unsuccessful reworking operations. The lessors argue that a distinction between drilling and reworking in their lease, for the purpose of extending the lease, is justified since they were more skeptical of the reworking of a dry hole, and therefore would allow further, separate operations if drilling were unsuccessful but would only allow other reworking operations to continue to their specific individual conclusions. In this argument, however, the lessors are not acknowledging the full and indisputable extent of the continuous operations clause in Paragraph IX: if any actual drilling or reworking operations are underway on the last day of the primary term, existing *or new* drilling or reworking operations may be performed in the future so long as there is no abatement of operations of more than ninety days. Furthermore, this argument ignores the text of the continuous operations clause appearing in Paragraph X(3) discussed above. Thus, the lessors' asserted justification for the distinction argues too much, leaving it incongruous with the terms of the lease in both paragraphs IX and X.

The lessors also argue that the more restrictive construction is correct because, if the less restrictive construction were intended, it could have been stated more simply. Of course, if the extension for continuous operations in Paragraph IX was meant to be coextensive with that in paragraph X(3), it could have been worded identically. On the other hand, the lack of obvious meaning of the phrase "complete a dry hole" runs against the lessors' more restrictive construction as well; if only drilling were intended to extend the lease, then the word "drilling" could have been used.

## C.

Finally, we examine another authority relevant to our interpretation of the phrase "completion of a dry hole." Although no authority precisely defines the term "completion," discussions of the term consistently refer to drilling. *See, e.g.*, Williams & Meyers, *Manual of Oil and Gas Terms* (7th ed. 1987). For example, "completed well" is defined primarily in terms of the extent to which a hole has been drilled, and "completion of a well" depends on certain acts in addition to drilling. Williams & Meyers, *Manual of Oil and Gas Terms* at 160, 163. In addition, this hole was completed once, within any definition, when it was drilled and abandoned under the preceding lease. As to subsequent completions of a single hole, authority suggests that further drilling is required. For example, "multiple completion" is defined as the "completion of a single well into more than one producing horizon." *Id.* at 578. Similarly, "recompletion" is defined as "[r]edrilling the same well bore to reach a new reservoir after production from the original reservoir has been abandoned." *Id.* at 811. In sum, the specialized industry definition of completion is primarily concerned with an event following drilling; no mention is made of the termination of reworking operations.

Nonetheless, the opposing viewpoint, that a lessee can complete a well without drilling, is not perforce precluded by this authority. Most notably, "completion of a well" is called "an indefinite term." *Id.* at 163. Its definition discusses the necessity of processes after drilling in order to complete a well. *Id.* This definition, however, does not state that drilling itself is actually necessary or that completion occurs only after *drilling* plus the additional completing acts. Moreover, the parties have not cited nor has the court found any authority that allows, precludes, or even discusses the application of the term "completion" to the termination of unsuccessful reworking operations. Thus, the fact that completion is discussed generally in terms of drilling, which is the primary and, at some point, necessary operation in any effort to obtain oil and gas, is not decisive. While we reject the defendants' contention that "completion" in this lease should be given its every-day, nonspecialized meaning, we are not prepared to say that the specialized definition, such as it is, compels the construction of the term as requiring drilling.

One section of the treatise does shed a glimmer of light on the purpose of the troublesome phrase in the second sentence of Paragraph IX; this section describes how drilling operations clauses have been rephrased so as to be applicable to certain times other than the expiration of the primary term:

> Thus, as has been noted previously, many dry hole and cessation of production clauses provide that if a dry hole is drilled or production ceases within a brief period of time before the expiration of the primary term [*e.g.*, 60 or 90 days], the lessee shall have a period of time extending beyond the expiration of the primary term to commence new operations. [Footnote omitted.] Some drilling operations and continuous drilling operations clauses have been modified to reflect such provision in manner as follows:
>
> "If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole within sixty (60) days prior to the end of the primary term, the lease shall remain in force ..." [4]

---

[4] A Texas lease form.

Williams, *Oil and Gas Law* § 617.3. This excerpt repeats the exact phrase that is the problem of the instant case. It offers a suggestion as to the purpose for inserting this phrase, i.e., to reflect the preceding dry hole clause in the continuous operations clause. Unfortunately, this explanation of the phrase does not answer our question: whether "shall have completed a dry hole" is generally construed to include "shall have unsuccessfully reworked a dry hole." Again, nowhere in the case law or other authorities has the court found an answer to this question.

### IV

In sum, we have reviewed the support for each party's interpretation of the operative phrase in the second sentence of paragraph IX. The lease does not explicitly state whether completion encompasses mere reworking operations without drilling. Our review of legal authority on the oil and gas industry shows that the meaning of "completion" assumes that a hole has just been drilled, but the term is considered to be indefinite and is not explicitly restricted to drilling. The context of the specific use of the phrase "completion of a dry hole" in this lease leads us to conclude that, in this sentence, completion of a dry hole happens after unsuccessful drilling *or reworking*. We base this conclusion significantly on the repetition of the phrase "drilling or reworking" in the second sentence of paragraph IX, and the more expansive wording of the continuous operations clause in paragraph X(3), as well as the lack of consistent justification for a distinction between drilling and reworking for the purpose of extending the lease. In other words, we construe this sentence in the general context of this lease and in the specific context in which it appears to read that the lease is extended whenever the lessee "shall have completed a dry hole thereon [*by drilling or reworking*] within ninety (90) days prior to the end of the primary term...." Thus the lessees' unsuccessful reworking of the dry hole within ninety days of the end of the primary term extended the lease beyond the date on which the lessees drilled the next hole, and there was no trespass. Accordingly, the summary judgment of the district court is

AFFIRMED.